G. H. HAMMOND COMPANY *v.* JOSEPH MERCANTILE COMPANY.

Opinion delivered May 17, 1920.

1. FACTORS—NATURE OF BUSINESS.—A factor or commission merchant is one engaged in an independent calling, and who buys and sells on commission, and who may sell any personal property which is left with or consigned to him for sale.

2.  FACTORS—AUTHORITY OF AGENT.—Where defendant was not in the exercise of an independent calling, and had no authority to sell meats for persons generally, but only to sell the products of the plaintiff on a commission, he was not a factor.

3.  PRINCIPAL AND AGENT—AUTHORITY TO SELL PRINCIPAL'S GOODS.— Though plaintiff permitted defendant as its agent to sell "overs," the increase in weight shipped to such agent resulting from salt put on it, or to sell his own goods on his individual account, this did not authorize him to sell meat of plaintiff for which he had exchanged "overs" without plaintiff's knowledge or consent.

Appeal from Greene Circuit Court; *R. H. Dudley,* Judge; reversed.

STATEMENT OF FACTS.

The plaintiff, G. H. Hammond Company, alleges in its complaint that it is a Michigan corporation duly authorized to do business in the State of Arkansas; that on the 6th day of May, 1918, the defendant, Joseph Mercantile Company, a domestic corporation, took into its possession and converted to its own use 1,165 pounds of bacon extras belonging to the plaintiff and of the value of $308.10.

The defendant answered denying the allegations of the complaint. The facts are substantially as follows:

Ray Perkins of Paragould, Arkansas, entered into a written contract with the plaintiff for the sale of its meat to be consigned to Perkins and kept by him in a storehouse in Paragould, Arkansas, and sold by him for the plaintiff. Perkins agreed to keep the goods in a suitable building and not mingle them with other merchandise and to sell the same without expense to the plaintiff except the commission he was to receive.

When dry salt meat was shipped to Perkins in carload lots, there would be some meat left over by reason of the meat being salted and sacked out. This would occur because Perkins only accounted to the plaintiff for the meat by weight. Perkins would put this left-over meat to one side in the house where he kept the plaintiff's meat and was accustomed to sell it as his own. In May, 1918, he had a quantity of this dry salt meat and asked

the representatives of the defendant to purchase it from him. They told him that they could not use the dry salt extras, but that they could use some bacon extras if he had it. Perkins went back to the warehouse and exchanged the dry salt extras, which he claimed for bacon extras belonging to the plaintiff of equal value, and sold the bacon extras to the defendant as his own. The defendant paid Perkins for the bacon extras.

On cross-examination the president of the defendant company testified that he knew that Perkins was a broker for the plaintiff company and that he had no right to sell the plaintiff's goods in his own name and receive payment therefor. He further stated, however, that he thought the goods he bought belonged to Perkins and that he had frequently bought goods from Perkins which were called ''overs,'' and which he understood belonged to Perkins. The bacon in question in this case was packed in the original boxes when it was delivered to the defendant. After it was delivered to the defendant, Perkins' warehouse burned down. The plaintiff did not know that Perkins claimed what he called the ''overs'' from carload lots and that he sold the same on his individual account. The plaintiff demanded payment of the bacon extras from the defendant and payment was refused by the defendant. Hence this lawsuit.

There was a verdict and judgment for the defendant and the case is here on appeal.

*D. G. Beauchamp,* for appellant.

1. The court erred in giving instruction No. 7 for plaintiff. Defendant could not take title from Perkins, for it knew that Perkins was the broker or factor of plaintiff and had no right to convert plaintiff's goods and sell them as his own. Perkins was authorized to sell its goods on his own account, and the doctrine of *caveat emptor* applies, and the jury should have been told if they found that the goods were sold to the defendant by Perkins as his individual goods and as a matter of fact they belonged to plaintiff, then their verdict should be

for the plaintiff.   54 Tex. 565; 42 Ark. 473; 47 *Id.* 363;
68 *Id.* 230; 93 *Id.* 521; 103 *Id.* 425.

2.   The verdict is contrary to the legal evidence, and
the verdict should be set aside with directions to find for
the amount due plaintiff with interest.

*Huddleston, Fuhr & Futrell,* for appellee.

1.   There is no error in giving instruction No. 7.
The verdict is neither contrary to the law nor the evi-
dence but is sustained by both.   It is a reasonable and
legal presumption that every one knows the usage and
custom of the place where he trades by himself or factor
and if the usage is not illegal he will be bound by it.
7 Mass. 46.   See, also, 49 Tex. 143; 49 *Id.* 161; Wharton
on Agency, § 134; Story on Agency, § 437; 3 Rawle 101;
13 Wall. 363; 49 N. Y. 464; 21 R. C. L. 902; 72 Am. St. 631;
3 Mo. App. 486; 69 Am. St. 799; 41 Am. Dec. 45; 63 S. E.
Rep. 950.

2.   Where a principal allows his goods to be so
managed by his factor as to indicate to third parties that
the factor is the owner, the factor may make a valid sale
in discharge of a previous debt to one who has no notice,
actual or constructive.   46 Tex. 391; 64 Md. 348; 1 Atl.
Rep. 709; 54 Am. Rep. 770; 55 Am. St. 916, note.   See, also,
6 Cal. 382; 46 Tex. 391; Story, Agency, §§ 110, 227, 390,
437; 2 Black (U. S.) 372; 6 Tex. 488; 7 Tenn. Rep. 359-
360.   Under the evidence the jury could not have re-
turned a different verdict.

HART, J. (after stating the facts).   It is earnestly
insisted by counsel for the plaintiff that the court erred
in giving instruction No. 7, which is as follows: "If the
plaintiff authorized or knowingly permitted its factor,
Perkins, to sell 'overs,' or any other of its goods, or his
own goods, on his individual account as individual owner
to customers, and said Perkins sold the bacon in ques-
tion to defendant in that way, and the defendant, acting
in good faith, and in ignorance of the rights of the plain-
tiff, and in the exercise of such care as an ordinary pru-
dent person would use under the circumstances to ascer-

tain whether said Perkins was selling his own goods or those of the plaintiff, and at the time believed Perkins to be the true owner, or authorized to sell in his own name, then you will find for the defendant."

We think counsel for the plaintiff is right in his contention. The court in giving the instruction seems to have proceeded upon the theory that Perkins was a factor or commission merchant. Such is not the case. A factor is generally defined to be an agent who has a business, as well as goods, or merchandise consigned and delivered to him by, or for his principal for a compensation commonly called a commission. 19 Cyc. 115; 11 R. C. L. 753; Story on Agency (8 ed.), § 33, and Story on Sales, § 91.

The presumption of an authority to sell in these cases is inferred from the nature of the business of the agent, and it fails when the case will not warrant the presumption of his being a common agent for the sale of property of that description. 2 Kent's Com. (14 ed.), *622. A factor or commission merchant then is one engaged in an independent calling and is one who buys and sells on commission and who may sell any personal property which is left with or consigned to him for sale.

In discussing the difference between a factor and a broker or agent, the Supreme Court of the United States said: "The difference between a factor or commission merchant and a broker is stated by all the books to be this: A factor may buy and sell in his own name, and he has the goods in his possession; while a broker, as such, cannot ordinarily buy or sell in his own name, and has no possession of the goods sold." *Slack* v. *Tucker & Co.*, 23 Wall. (U. S.) 321.

In the case at bar Perkins was not in the pursuit of an independent calling and did not have the authority to sell meat for persons generally, but only had the authority to sell the products of the plaintiff on a commission. It is true he sold the "overs," as he called them, on his own individual account, but he did not have the author-

ity to sell meat generally for persons consigning same to him or leaving it in his possession. He did not attempt to exercise such authority. He was the exclusive agent for the plaintiff and his course of business clearly constituted him as the plaintiff's broker or agent as contradistinguished from a factor, or commission merchant. The president of the defendant company knew that Perkins was the broker or agent of the plaintiff and that he had no right to sell the plaintiff's goods for himself. According to the evidence adduced in favor of the plaintiff, he did not authorize Perkins to sell "overs" or any of its goods on his own account.

It is true that, according to the testimony of Ray Perkins, the manager of the plaintiff company knew that the quantity of the meat shipped by it to Perkins would gain in weight on account of the salt put on it, and that he told Perkins that the company would be satisfied to receive the amount of meat it shipped to Perkins, thereby tacitly giving him the right to use what was called the "overs" on his own account. The fact, however, that the plaintiff company might permit Perkins to sell "overs," or his own goods on his individual account, did not warrant the jury in finding for the defendant. The meat in question was not "overs," but was meat of the plaintiff for which Perkins had exchanged "overs" without the knowledge or consent of the plaintiff. The president of the defendant company admitted that he knew that Perkins was the broker or agent of the plaintiff and that he had no right to sell the plaintiff's goods in his own name. Perkins was not a factor or commission merchant and had no right to sell the products of the plaintiff in his own name. Therefore, the court erred in assuming to the jury that Perkins was a factor and in telling the jury to find for the defendant if it should further find that the plaintiff authorized or knowingly permitted its factor, Perkins, to sell "overs," or any of its goods, or his own goods on his individual account.

Hence the instruction was erroneous and necessarily prejudicial to the rights of the plaintiff.

For the error in giving instruction No. 7, the judgment must be reversed and the cause remanded for a new trial.